IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: ) | |
| ) | |
| FRANK LAMONT SWAIN and ) | Case No. 00-42395 |
| ESTHER MARIE SWAIN, ) | |
| ) | |
| Debtors. ) | |
| ) | |
| FRANK LAMONT SWAIN and ) | Adversary No. 04-5255 |
| ESTHER MARIE SWAIN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DREDGING, INC., d/b/a ) | |
| SCOTT'S CONCRETE and ) | |
| JANE ELLEN MARTIN, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Debtors Frank and Esther Swain filed a Complaint seeking a judgment of contempt and both compensatory and punitive damages against defendants Dredging, Inc., d/b/a Scott's Concrete, and Jane Martin (the Defendants) for an alleged violation of 11 U.S.C. § 524(a). The parties then filed cross motions for summary judgment. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) over which the Court has jurisdiction pursuant to 28 U.S.C. § 1334(b), 157(a), and 157(b)(1). The following constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure. For the reasons set forth below, I will grant Defendants motion for summary judgment.

FACTUAL BACKGROUND

On February 15, 2000, Esther Swain executed a check drawn on the Bank of Versailles in the amount of $17,261.52 payable to Dredging, Inc. On February 17, 2000, the Bank of Versailles returned the check for insufficient funds. Jane Martin, an officer and the registered agent for Dredging, Inc., filed a "Bad Check Referral From" with James Icenogle, the Prosecuting Attorney for Camden County, Missouri. On March 20, 2000, Icenogle sent the first notice to Ms. Swain informing her that a referral had been filed. On April 3, 2002, Icenogle sent a second notice. In addition, on March 19, 2000, Icenogle advised Ms. Swain that, unless payment was made, along with a "merchants fee" in the amount of $10.00 and a statutory penalty in the amount of $25.00, he would begin a criminal prosecution. On May 30, 2000, Ms. Swain paid the sum of $17,261.52 to Icenogle, along with the fee and penalty. Icenogle forwarded the payment to Dredging, Inc.

On June 28, 2000, the Swains filed a Chapter 13 bankruptcy petition. On August 8, 2000, Dredging, Inc. filed a proof of claim for other unpaid charges in the amount of $11,337.96. During 2001, the Chapter 13 trustee filed several motions to convert the case to Chapter 7 based on failure to make payments, failure to provide insurance, and other difiiculties. Eventually, on November 6, 2001, the Chapter 13 case was converted to Chapter 7, and on February 20, 2002, debtors received a discharge.

On March 6, 2002, the Chapter 7 trustee filed an adversary proceeding against Dredging, Inc. alleging that the payment of $17,261.52 within 90 days of the Chapter 13 bankruptcy filing was a preferential transfer. On June 3, 2002, the trustee and Dredging, Inc.

2

entered into a settlement agreement pursuant to which Dredging, Inc. agreed to return the sum of $11,500.00 to the trustee.

There is no dispute that, sometime prior to the filing of the adversary proceeding, the Defendants provided Icenogle's office with pleadings filed in the bankruptcy case. There is, however, no evidence that the Defendants filed a second "Bad Check Referral Form" with the prosecutor at any time after the bankruptcy case was filed; indeed, Icenogle states in his affidavit that they did not, and the Swains offer no evidence to the contrary.

On August 19, 2002, and on September 3, 2002, Icenogle again sent Ms. Swain form letters stating that she had executed a check that had been returned for insufficient funds and that <u>unless payment was made</u>, a criminal prosecution would result. On September 26, 2002, the Camden County, Missouri Prosecuting Attorney issued an affidavit of probable cause, despite being informed by both the trustee and the Swains' bankruptcy attorney of the bankruptcy case, and despite the fact that Ms. Swain had previously made the check good. In October of 2002, Icenogle filed an information charging Ms. Swain with a Class D felony and caused a warrant for her arrest to be issued. On February 29, 2004, Ms. Swain was arrested. After posting a bond of $3,500.00, she was released. On March 31, 2004, Icenogle dismissed the charges.

The Swains, who have brought no action against Icenogle either in his individual or professional capacity, allege that the Defendants violated the discharge injunction by taking affirmative steps to cause Icenogle to attempt to collect a discharged debt.

The Defendants do not deny that they notified Icenogle of the bankruptcy filing, which

3

is of public record. Icenogle, however, submitted an affidavit stating that he alone made the decision to prosecute Ms. Swain, that the Defendants exerted no pressure on him, and that the collection of the debt is a collateral issue in the criminal prosecution of someone who intentionally executes a check for insufficient funds. The parties filed cross motions for summary judgment. In their motion for summary judgment the Swains seek relief pursuant to both section 362 and 524 of the Bankruptcy Code (the Code). In their Complaint, however, they only sought relief under section 524.

### DISCUSSION

Rule 7056 of the Federal Rules of Bankruptcy Procedure provides that Rule 56 of the Federal Rules of Civil Procedure applies when a party moves for summary judgment in an adversary proceeding in this Court. Rule 56 states that the "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]

The Swains' motion for summary judgment alleges a violation of both sections 362 and 524 of the Code. It is not clear from the record the exact date that the Defendants notified Icenogle that the Swains had filed for bankruptcy relief. The record is, however, clear that Icenogle instituted the first criminal investigation before the debtors filed for bankruptcy relief on June 28, 2000, and the second criminal investigation after debtors had received their

---

[1] Celotex v. Catrett, 477 U.S. 317, 322-26 (1986); Tudor Oaks Limited Partnership v. Cochrane, 124 F.3d 978, 981 (8th Cir. 1997), *cert. denied*, 522 U.S. 1112.

discharge on February 20, 2002. The Code provides that the stay commences with the filing of the case[2] and continues until the discharge is granted:

> (C) Except as provided in subsections (d), (e), and (f) of this section–
>
> . . .
>
> (2) the stay of any other act under subsection (a) of this section continues until the earliest of–
>
> . . .
>
> (C) if the case is a case under chapter 7 of this title concerning an individual . . . the time a discharge is granted or denied.[3]

There is, therefore, no evidence before me on this motion for summary judgement that the Defendants violated the automatic stay.

Section 524 of the Code enjoins all actions to collect a debt that has been discharged:

> (a) A discharge in a case under this title–
>
> . . .
>
> (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.[4]

The Swains allege that the Defendants "requested Mr. Icenogle to send his standard bad check

---

[2] 11 U.S.C. § 362(a).

[3] 11 U.S.C. § 362(c)(2)(C).

[4] 11 U.S.C. § 524(a)(2).

letter to Ms. Swain on August 12, 2002."[5] Icenogle, however, testified in both his deposition and his sworn affidavit that he made the decision to prosecute Ms. Swain without being requested to do so by the Defendants. Jane Martin claims that she had one contact with Icenogle for the sole purpose of informing him of the conversion of the bankruptcy case to Chapter 7. Icenogle confirms that this is the only contact he had with Ms. Martin after the bankruptcy filing. The Swains offer no contradictory evidence, and nothing at all to support their contention that, post bankruptcy, the Defendants requested that Icenogle initiate proceedings against Ms. Swain. There is, thus, no genuine issue as to the material fact that Ms. Martin's action in providing the prosecutor with copies of bankruptcy court pleadings was the only contact the Defendants had with the prosecutor's office after the commencement of the bankruptcy case. Such action by the Defendants violates neither the automatic stay nor the discharge injunction. The filing of a bankruptcy case is a public record. In fact, the Clerk of the Bankruptcy Court sends a notice of a bankruptcy filing to all creditors listed on a debtor's schedules. The public has access to any pleadings filed in a bankruptcy case. Simply notifying another individual of the filing of a petition, or any other activity during the course of a bankruptcy case, cannot, therefore, be a violation of the automatic stay or the discharge injunction.

The Swains allege damages related to Ms. Swain's arrest. They claim Mr. Swain had a heart attack while watching the arrest. They claim Ms. Swain suffered emotional distress and

---

[5]Plaintiff's Suggestions in Opposition to Defendants' Cross-Motion for Summary Judgment, Doc. # 20 at pg. 2.

embarrassment while incarcerated. They claim Ms. Swain incurred attorney's fees, costs, and lost wages as a result of the arrest. They did not, however, name Icenogle or the Office of the Prosecuting Attorney as a party to this proceeding. Nor did they claim that Ms. Swain was falsely arrested. This Complaint and the motion for summary judgment are directed solely at the Defendants. I find the Swains have offered no evidence, other than their allegations, that would allow me to find that the Defendants violated the discharge injunction by notifying another individual or entity of a bankruptcy filing.

I will, therefore, deny the Swains' motion for summary judgment and grant the Defendant's motion for summary judgment.

An Order in conjunction with this Memorandum Opinion will be entered this date.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: February 11, 2005

Copy to: William P. Nacy
David C. Stover